IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

IRIS E. SALAZAR,
INDIVIDUALLY, AND AS
INDEPENDENT ADMINISTRATOR
OF THE ESTATE OF LESLIE
YOLANDA SALAZAR                          §
     Plaintiff,                            §
                       §
        v.                                 §
                       §   CIVIL ACTION NO.: 1:20-cv-00730
THE CITY OF AUSTIN, TEXAS,
THOMAS BROWN, ELIAS ROBLES          §
     Defendants                            §

## DEFENDANTS' NOTICE OF REMOVAL

TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN
DISTRICT OF TEXAS, AUSTIN DIVISION:

      COME NOW the City of Austin, Thomas Brown and Elias Robles ("Defendants") and file

this Notice of Removal, pursuant to 28 U.S.C. § 1441(a), 1443, and 1446(b)(1):

      1.    The above-referenced action is a claim governed by federal law since the Plaintiff

alleges that City of Austin police officers Thomas Brown and Elias Robles used excessive force

which resulted in the death of Plaintiff's decedent.  Plaintiff also alleges that the City of Austin

was responsible for assuring that its employees complied with the laws of the United States and

alleges that the policies and practices of the City of Austin resulted in the death of Plaintiff's

decedent.  This case, therefore, poses federal questions subject to removal under 28 U.S.C. §1331

and §1441(a).

      2.    On June 10, 2020, Defendants were first served with the petition stating these

claims under federal law.  This notice of removal is filed within thirty (30) days of that date and

is, therefore, timely under 28 U.S.C. §1446(b).

3.      This action is being removed to the District Court of the United States for the district and division embracing the place where the state court action is pending.

4.      The City of Austin, Thomas Brown and Elias Robles are the only named defendants and each has consented to removal.

5.      Attached to and filed with this Notice of Removal are copies of all process, pleadings, and other documents on file in the records of the state court for this case, along with a copy of the docket sheet.

6.      Simultaneous with the filing of this Notice of Removal, Defendants will file a copy of the notice with the Clerk of the 98th Judicial District Court of Travis County, Texas, under Cause No. D-1-GN-20-003037.

7.      As evidenced by the certificate below, Defendants have served counsel for Plaintiff with a copy of this notice.

WHEREFORE PREMISES CONSIDERED, Defendants respectfully request that this case be removed from the 98th Judicial District Court of Travis County, Texas to the United States District Court for the Western District of Texas, Austin Division; and that the United States District Court issue such notices and orders necessary to bring before it all proper parties, and such other orders and notices as may be authorized by law.

RESPECTFULLY SUBMITTED,

ANNE MORGAN, CITY ATTORNEY
MEGHAN RILEY, CHIEF OF LITIGATION

/s/ H. Gray Laird III
H. Gray Laird
Assistant City Attorney
State Bar No. 24087054
gray.laird@austintexas.gov
City of Austin Law Department
P.O. Box 1546
Austin, Texas 78767-1546

2

Telephone: (512) 974-1342
Facsimile: (512) 974-1311

**ATTORNEYS FOR DEFENDANTS**

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that I have served a copy of the foregoing on all parties, or their attorneys

of record, in compliance with the Federal Rules of Civil Procedure, on this 7th day of July, 2020,

as follows:

**<u>Via e-Service and/or facsimile:</u>**
Scott S. Cooley
Texas Bar No. 00796394
Jackie P. Paltrun
Texas Bar No. 24087140
512 E. Fourth St.
Lampasas, Texas 76550
Tel. (512) 556-6228
Fax. (844) 318-6073
Scott@lampasaslawyer.com
**ATTORNEYS FOR PLAINTIFF**

/s/ H. Gray Laird III
H. Gray Laird

# EXHIBIT

**District Clerk - AARO - Attorney Access to Records Online**

# Details

**Updated : Tuesday, July 7, 2020 4:37:19 AM**

Request Documents (https://www.traviscountytx.gov/district-clerk

New Search (/aaro/)

**Cause Number**
D-1-GN-20-003037
**Style**
SALAZAR V CITY OF AUSTIN
**Filed Date**
6/8/2020
**Court**
98
**Type**
WRONGFUL DEATH (GEN LIT )
**Case Status**
PENDING
**Action/Offense**
**Hearing Date**

| Attorney | Type | Party - Full/Business | Party - Person |
|----------|------|----------------------|----------------|
| COOLEY SCOTT S. | PLAINTIFF | | MCGARVEY , DANIEL |
| | DEFENDANT | | ROBLES , ELIAS |
| | DEFENDANT | | BROWN , THOMAS |
| | OTHER | ESTATE OF LESLIE YOLANDA SALAZAR | |
| COOLEY SCOTT S. | PLAINTIFF | | SALAZAR , IRIS E |
| | DEFENDANT | CITY OF AUSTIN TEXAS | |

| Date | Court | Party | Description | Category | Pages | |
|------|-------|-------|-------------|----------|-------|---|
| 6/16/2020 | 98 | DF | ISS:CITATION | ISSUANCE | 1 | Download (/aaro/Default/GetPdf?barCodeId=7147842) |
| 6/16/2020 | 98 | DF | ISS:CITATION | ISSUANCE | 1 | Download (/aaro/Default/GetPdf?barCodeId=7147825) |
| 6/16/2020 | 98 | DF | ISS:CITATION | ISSUANCE | 1 | Download (/aaro/Default/GetPdf?barCodeId=7147784) |
| 6/8/2020 | 98 | PL | ORIGINAL PETITION/APPLICATION | PET-PL | 19 | Download (/aaro/Default/GetPdf?barCodeId=7137995) |

Request Documents (https://www.traviscountytx.gov/district-clerk/records-request)

New Search (/aaro/)

© 2020 Travis County, Texas - All rights reserved.

6/8/2020 11:42 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-20-003037
Victoria Benavides

CAUSE NO. D-1-GN-20-003037 _____

| | | |
|---|---|---|
| IRIS E. SALAZAR, | § | IN THE DISTRICT COURT |
| INDIVIDUALLY, AND AS | § | |
| INDEPENDENT ADMINISTRATOR OF | § | |
| THE ESTATE OF LESLIE YOLANDA | § | |
| SALAZAR, | § | |
|     PLAINTIFF, | § | ____ 98th JUDICIAL DISTRICT |
| v. | § | |
| | § | |
| THE CITY OF AUSTIN, TEXAS; | § | |
| THOMAS BROWN; ELIAS ROBLES, | § | |
|     DEFENDANTS. | § | TRAVIS COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE DISTRICT COURT:**

**NOW COMES** Iris E. Salazar, Individually and as Independent Administrator of the Estate of Leslie Yolanda Salazar, Plaintiff, complaining of and about The City of Austin, Texas, and police officers Thomas Brown and Elias Robles, Defendants, and for cause of action shows as follows:

### DISCOVERY CONTROL PLAN LEVEL

1.    Plaintiff intends that discovery be conducted under Discovery Level 2.

### PARTIES AND SERVICE

2.    Plaintiff, Iris E. Salazar, is an individual who resides in the state of Texas. Iris E. Salazar is the surviving mother of Leslie Yolanda Salazar and the Independent Administrator of the Estate of Leslie Yolanda Salazar. Plaintiff brings this action in her individual capacity and in her capacity as Independent Administrator. The last three digits of the social security number of Iris E. Salazar are *304. The last three digits of the driver's license number of Iris E. Salazar are *743. Plaintiff is entitled to bring this action on behalf of all beneficiaries pursuant to TEX. CIV. PRAC. & REM. CODE ANN. § 71.004(b) and (c).

3.    The names of the wrongful death beneficiaries and their relationship to Leslie

1

Yolanda Salazar, decedent, are as follows:

    Name: Iris E. Salazar
    Relationship: Mother

    Name: Daniel McGarvey, II
    Relationship: Father

The survival portion of this petition is brought by plaintiff in her capacity as the Independent

Administrator of the Estate of Leslie Yolanda Salazar pursuant to Texas Civil Practice &

Remedies Code § 71.021.

    4.    Defendant City of Austin, Texas ("the City"), is and was a home-rule, municipal

corporation and political subdivision of the State of Texas and existing under the laws of the

State of Texas, with the capacity to be sued. The City is responsible for the actions, omissions,

policies, procedures, practices, and customs of its various agents and agencies, including the

Austin Police Department ("APD") and its agents and employees. At all relevant times, the City

was responsible for assuring that the actions, omissions, policies, procedures, practices, and

customs of the APD and its employees and agents complied with the laws of the United States

and of the State of Texas. At all relevant times, the City was the employer of Defendants

Thomas Brown and Elias Robles.

    5.    Pursuant to Texas Civil Practice and Remedies Code Section 17.024(b),

Defendant City may be served by serving the mayor, clerk, secretary, or treasurer of the City at

301 West 2nd Street, Austin, Texas 78701.

    6.    Defendant Thomas Brown is an individual who, upon information and belief,

resides in or around Travis County, Texas, and who may be served at his last known place of

business: Austin Police Department; 715 E. 8th St., Austin, Texas 78701-3300, or wherever he

may be found.

2

7.     Defendant Elias Robles is an individual who, upon information and belief, resides in or around Travis County, Texas, and who may be served at his last known place of business: Austin Police Department; 715 E. 8th St., Austin, Texas 78701-3300, or wherever he may be found.

8.     Brown and Robles were at all relevant time police officers for APD.  They were acting under color of law within the course and scope of their duties as officers for the APD at all relevant times.  Also at all relevant times, Brown and Robles were acting with the complete authority and ratification of their principal, Defendant City.

### JURISDICTION AND VENUE

9.     The subject matter in controversy is with in the jurisdictional limits of this court.

10.    Plaintiff seeks:

a.     monetary relief over $1,000,000.00.

11.    This Court has jurisdiction over Defendants because the Defendant City is a Texas municipality, and the individual defendants are residents of the State of Texas.

12.    Venue is appropriate because the facts of this case arose in Travis County, Texas and the Defendant City is a municipal entity located within Travis County, Texas, and Travis County was the county of residence of the individual defendants at the time the cause of action accrued.

### FACTS

13.    Leslie Yolanda Salazar was born on November 7, 1997, to Iris E. Salazar and Daniel McGarvey, II.  When Leslie was 20 years old, on June 7, 2018, Defendant Thomas Brown shot and killed her in Austin, Travis County, Texas at the premises located at 7328 S. Glenn St., Austin, Texas 78744.  Leslie was 5'3" tall and weighed 100 pounds when she was

killed.  The medical examiner determined that the cause of death was "Gunshot Wounds."  The death certificate describes the "Manner of Death" as "Homicide."  Ms. Salazar was laid to rest in Lampasas, Texas.

14.     This recitation of facts behind the incident is based largely on the police interviews and statements taken the night Ms. Salazar was killed as reflected in the Travis County District Attorney's letter explaining her decision not to prosecute Officer Brown.  (The "Declination Letter").

15.     On June 7, 2018, at 2:23:14 A.M. and 2:26:41 A.M., two telephone calls were made to 911 in quick succession.  On the first, the caller complained of a suspect named "Leslie" attempting to break into a home at 7328 S. Glenn Street in Austin.  As the facts later became clearer, it was discovered that "Leslie" was in fact an invited guest at the premises, and in the second 911 call, the caller, Sidney Joy, said the suspect Leslie was her cousin and was threatening people in the house with a knife.

16.     Officer Elias Robles #7251 (Unit H703) assigned himself to the call, and Officer Thomas Brown #8106 (Unit H707) was assigned as his back-up.  Records indicate that Officer Robles arrived at 2:30:21 A.M., and Officer Brown arrived about three minutes later.  Leslie Salazar was dead less than thirty minutes later.

17.     Officer Robles was the first on scene, and he went straight to the subject address, where he saw a knife lying in the driveway in front of the house.  He knocked on the front door of the house, but got no response and was soon redirected to a nearby intersection.  He collected the knife that was found outside and secured it in his vehicle.  At the intersection, Officer Robles met with two residents of the home, Lauren Chips and Sidney Joy.  Officer Brown arrived soon thereafter.  It was at that time that officers learned that another woman, Valerie Kernes, a

roommate of Ms. Chips and Ms. Joy, was still in the house.  Ms. Kernes later told police she had

seen the earlier altercation, including Ms. Salazar shouting "Kill me! Kill me!", and had helped

break up a physical fight earlier in the evening between Ms. Salazar and Ms. Chips.  Eventually,

after 2:00 A.M., Ms. Kernes returned to her room and tried to go back to sleep.  After police

arrived, Ms. Chips called Ms. Kernes and told her to come outside, which she did, unharmed.[1]

18.     As soon as Officers Brown and Robles entered the house they announced

themselves as police officers, with Brown in the lead and Robles directly behind him.  Robles

initially led the way in, but eventually, Officer Brown moved in front.  Interestingly, Officer

Brown admitted he could not remember Ms. Salazar's name so he asked Officer Robles.  After

calling her name Officer Brown moved in front to clear the kitchen area, and within seconds Ms.

Salazar appeared approximately 8-10 feet in front of him.  Officer Brown stated: "I see that she

has a knife which in my mind looked - looked to be like two or three feet - it looked huge.[2]  She

had a knife in her right hand and she had it up like this. And I see that - at the same time that I

see that I see her face and I just remember her face. I - I don't know the - the word to put it but it

looked like, staring off like - like she was on a mission or some -- I don't - I don't know who

[sic] to put it. But like - like she was on a mission."

19.     Officer Robles also described that moment to investigators:  "As we approached

the kitchen was when Leslie pops out approximately 8 to 10 feet in front of us.  I identified

Leslie by the clothing description we had previously been given of wearing a dark gray shirt, and

cut-off jeans. Leslie had a knife in her right hand and holding it in a stabbing type way with the

---

[1] The District Attorney's declination letter states, "Even though Ms. Kernes had come out unhurt, the two officers were unsure whether anyone else might be in the house with Ms. Salazar due to the fact that all of the witnesses appeared to be intoxicated and therefore unclear on who'd been in the house and who might still be inside."  Direct statements recorded on Officer Robles's bodycam show this to be untrue, as he remarks more than once that Ms. Salazar was the only person left in the house.

[2] In fact, instead of being "two or three feet," the knife was a typical 6-8 inch kitchen steak knife.

point down.  She is holding it in front of her at about her waist to chest height.  Leslie had a

blank stare on her face of just nothing."  Robles said that at this time Brown shouted at Leslie to

drop the knife at least twice, and this statement is supported by the audio captured by Officer

Brown's bodycam.  Immediately thereafter, Officer Brown fired three shots, and Ms. Salazar fell

to the ground.[3]

20.     At this point, Ms. Salazar still had the knife in her hand and she was still moving.

When she stopped moving, Officer Brown "moved forward and removed the knife from her

hand. I don't think he used his hand but may have stepped on the knife and moved it away from

Leslie's reach."  Officer Brown confirmed that he put his foot on the knife and slid it out of the

way, and then: "I believe I dragged her [be]cause even if he - where she fell was in a very tight

space so I moved her out of that space and then I began [to] apply pressure."  EMS arrived on

scene at 2:55 A.M., and Ms. Salazar was pronounced dead at 3:00 A.M.

21.     On July 20, 2017, less than a year before this fatal shooting, APD issued its

"Policy Manual," which put into effect a comprehensive written set of rules for "De-escalation"

and "De-escalation Techniques," defined as:

> De-escalation - Using techniques to stabilize the situation and reduce the
> immediacy of the threat, so that more options and resources are available to bring
> about a successful resolution to an encounter with a non-compliant subject. The
> goal of de-escalation is to gain the voluntary compliance of subjects, when
> feasible, thereby eliminating the need to use force in response to resistance.

> De-escalation Techniques - Communicative or other actions used by officers,
> when safe, and without compromising law-enforcement priorities, that are
> designed to increase the likelihood of gaining voluntary compliance from a non-
> compliant subject, and reduce the likelihood of using force in response to
> resistance.

APD Policy Manual 2017-1.5 Issued 7/20/2017 (excerpt attached hereto as Exhibit A).

---

[3] What the bodycam video actually proves is that instead of giving Ms. Salazar time to drop the weapon, Officer Brown fired almost simultaneously, or mere fractions of a second after his command.

22.     Specifically, when determining whether to apply any level of force and evaluating whether an officer has used objectively reasonable force, a number of factors should be taken into consideration.  These factors include, but are not limited to:

(1) The conduct of the individual being confronted as reasonably perceived by the officer at the time.
(2) Officer/subject factors such as age, size, relative strength, skill level, injury/level of exhaustion and number of officers vs. subjects.
(3) Influence of drugs/alcohol or mental capacity.
(4) Proximity of weapons.
(5) The degree to which the subject has been effectively restrained and his ability to resist despite being restrained.
(6) Time and circumstances permitting, and the availability of other options (what resources are reasonably available to the officer under the circumstances).
(7) Seriousness of the suspected offense or reason for contact with the individual.
(8) Training and experience of the officer.
(9) Potential for injury to citizens, officers and subjects.
(10)    Risk of escape.
(11)    Whether the conduct of the individual being confronted no longer reasonably appears to pose an imminent threat to the officer or others.
(12)    Other exigent circumstances.

*Id.*

23.     These factors were largely ignored:

(1) The conduct of the individual being confronted as reasonably perceived by the officer at the time;
   - There was no indication upon arrival of the officers on the scene that Leslie Salazar was a danger to anyone.  There was literally no reason to "confront" her without some attempt to diffuse the situation.

(2) Officer and subject factors such as age, size, relative strength, skill level, injury/ level of exhaustion and number of officers versus subjects;
   - This factor cannot be overemphasized.  There is no "objective reasonableness" analysis that would allow the conclusion that two Austin police officers' size, relative strength, or skill level would call for the use of deadly force to neutralize a petite woman with a steak knife.

(3) Influence of drugs and alcohol or mental capacity;
   - Ms. Salazar was at least intoxicated, and perhaps mentally imbalanced.  There was simply no reason to rush this confrontation.

(4)  Proximity of weapons;

- Ms. Salazar was holding a kitchen steak knife eight to ten feet away from Officer Brown.

(5)  The degree to which the subject has been effectively restrained and his ability to resist despite being restrained;

- This factor does not appear to apply.

(6)  Time and circumstances permitting, the reasonable availability of other resources to the officer;

- Time and circumstance both permitted bringing in other resources to deal with the situation, including less lethal methods of subduing Ms. Salazar.

(7)  Seriousness of the suspected offense or reason for contact with the individual;

- Presumably, the suspected offense was assault; that factor would not weigh in favor of an ill-prepared advance on the subject.

(8)  Training and experience of the officer;

- It appears the training should have been there considering the de-escalation guidelines.  Unfortunately, it was not put into practice.

(9)  Potential for injury to citizens, officers and subjects;

- Literally none, if the proper de-escalation techniques were used before Officer Brown opened fire.

(10)  Risk of escape;

- This factor does not appear to apply.  Even if it did, the harm (death of a young woman) weighed against the potential risk of escape would mitigate in favor of de-escalation at least being attempted.

(11)  Whether the conduct of the individual being confronted no longer reasonably appears to pose an imminent threat to the officer or others;

- Again, Leslie Salazar was alone in a home with a kitchen steak knife.  All complaining witnesses were outside the home.  Ms. Salazar posed absolutely no imminent threat to anyone.

(12)  Other exigent circumstances.

Had other, less lethal actions been allowed to work, Leslie Salazar would be alive today.

24.  Defendant City has a longstanding record of not providing APD officers with adequate training and not preventing excessive force claims against its officers.  As a result of

the lack of training and the official custom or policies of the APD, Defendants Brown's and Robles's inadequate training and failure to implement APD's policies resulted in the death of Leslie Salazar.  APD failed to provide adequate training to its officers in the use of deadly force.  APD failed to provide adequate training to its officers on proper arrest and confrontation techniques.  APD failed to provide adequate training to its officers on appropriate methods and techniques to control situations similar to the one at issue in this case.  The City knew or should have known that the training provided to the officers was inadequate or nonexistent.

## CAUSES OF ACTION

### Wrongful Death

25.     Plaintiff incorporates by reference the allegations set forth in the previous paragraphs.  Plaintiff brings this wrongful death action on her behalf and on behalf of all statutory heirs pursuant to Texas Civil Practice and Remedies Code§ 71.001, et seq.

26.     Iris E. Salazar was Leslie Yolanda Salazar's mother.

27.     Defendants City, Brown, and Robles are all "persons" under Chapter 71 of the Civil Practice and Remedies Code.[4]  Defendants' wrongful and intentional acts, neglect, carelessness, unskillfulness, and/or default described herein caused Leslie Yolanda Salazar's death.  Leslie Yolanda Salazar would have been entitled to bring an action for her injuries against Defendants had she lived.

28.     Plaintiff has suffered, and will continue to suffer, a loss of consortium and damage to the child/parent relationship, including the loss of love, affection, solace, comfort, companionship, society, assistance, and emotional support from her son as a proximate result of defendants' actions.

---

[4] "Person" means an individual, association of individuals, joint-stock company, or *corporation* . . . .  "Corporation" means a *municipal*, private, public, or quasi-public corporation other than a county or a common or independent

29.     As a proximate cause of defendants' actions, Plaintiff has suffered severe mental depression and anguish, grief, and sorrow as a result of her daughter's death, and in all reasonable probability, will continue to suffer indefinitely into the future.

30.     Plaintiff also suffered pecuniary loss and loss of inheritance due to the death of her daughter, which defendants' actions proximately caused.

31.     The City is liable not only for its own wrongful act, neglect, carelessness, unskillfulness, or default, but also for its agents' or servants'.  TEX. CIV. PRAC. & REM. CODE § 71.002(b).

### Survival Action

32.     Plaintiff brings this survival action in her capacity as legal heir of decedent and Independent Administrator of the Estate of Leslie Yolanda Salazar pursuant to Texas Civil Practice & Remedies Code § 71.021.   Defendants' intentional and negligent acts were a proximate cause of tremendous conscious pain, suffering, terror, and mental anguish to Leslie Yolanda Salazar preceding her eventual death.  The Estate of Leslie Yolanda Salazar is entitled to recover damages for:

    a.      Leslie Yolanda Salazar's conscious physical pain and suffering suffered by prior to her death;

    b.      her conscious mental anguish suffered prior to her death; and

    c.      Funeral and burial expenses for Leslie Yolanda Salazar.

### PROXIMATE CAUSE

33.     Each and every, all and singular of the foregoing acts and omissions, on the part of Defendants, taken separately and/or collectively, constitute a direct and proximate cause of the injuries and damages set forth below.

---

school district.  TEX. CIV. PRAC. & REM. CODE § 71.001(1), (2) (emphasis added).

## DAMAGES FOR WRONGFUL DEATH AND SURVIVAL

34.     As a proximate result of the above-described acts and/or omissions on the part of the Defendants, jointly and severally, by and through their vice principals, agents, employees, and representatives, Plaintiff and the deceased sustained serious, disabling, and permanent injuries.

35.     The Estate of Leslie Yolanda Salazar has suffered the following damages:

a.     Past physical pain, suffering, and mental anguish;

b.     Loss of earning capacity;

c.     Past physical disfigurement; and

d.     Past physical impairment.

36.     Iris E. Salazar has suffered the following damages:

a.     Loss of consortium in the past and in the future;

b.     Loss of advice and counsel in the past and in the future;

c.     Loss of services in the past and in the future;

d.     Loss of companionship and society in the past and in the future;

e.     Loss of inheritance;

f.     Past and future mental anguish; and

g.     Past and future medical and therapy.

37.     Plaintiff is entitled to recover actual damages on her behalf and on behalf of the Estate of Leslie Yolanda Salazar in an amount that is sufficient to compensate for their injuries.

## EXEMPLARY DAMAGES

38.     The acts or omissions alleged herein, when viewed objectively from the standpoint of the Defendants, involved an extreme degree of risk, considering the probability and

11

magnitude of potential harm to others, and were of such a nature that Defendants had, or should have had, a subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others, including but not limited to Leslie Yolanda Salazar and Plaintiff.

39.     As a result of the untimely death of Ms. Salazar, her family has suffered and will continue to suffer into the future a pecuniary loss from her death, including loss of household services, along with contributions of pecuniary value which they would have, in reasonable probability, received from Ms. Salazar during their lifetimes, had Ms. Salazar lived.

40.     Iris E. Salazar has suffered severe mental depression and anguish, grief, and sorrow as a result of the death of her daughter, and in all reasonable probability will continue to suffer indefinitely into the future.  She has experienced the one loss that every parent fears; she has buried her beloved daughter, Leslie.  Plaintiff has suffered, and will continue to suffer, a loss of consortium and damage to the child/parent relationship, including the loss of love, affection, solace, comfort, companionship, society, assistance, and emotional support from her daughter.

41.     For all the foregoing losses, plaintiff seeks exemplary damages within the jurisdictional limits of this Court.

### PRAYER

**WHEREFORE**, Plaintiff, Iris E. Salazar, in her individual capacity and as the sole representative of the Estate of Leslie Yolanda Salazar, respectfully prays that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants, jointly and severally, for damages in an amount within the jurisdictional limits of the Court; exemplary damages, as addressed to each Defendant per Section 41.006, Chapter 41, Texas Civil Practice and Remedies Code, excluding interest, and

as allowed by Sec. 41.008, Chapter 41, Texas Civil Practice and Remedies Code, together with pre-judgment interest at the maximum rate allowed by law; post-judgment interest at the legal rate, costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully submitted,

MARTIN • MILLICAN • COOLEY, PLLC

By:   /s/Scott S. Cooley
        Scott S. Cooley
        Texas Bar No. 00796394
        Jackie N. Paltrun
        Texas Bar No. 24087140
        512 E Fourth St.
        Lampasas, Texas 76550
        Tel. (512) 556-6228
        Fax. (844) 318-6073

**ATTORNEYS FOR PLAINTIFF**

Unofficial copy Travis Co. District Clerk Velva L. Price

# Austin Police Department
Policy Manual

## CHIEF'S MESSAGE

I am proud to present the newest edition of the Austin Police Department Policy Manual. The Policy Manual is designed to assist all employees in accomplishing the Department's mission in a professional and lawful manner. Adherence to these policies also helps safeguard employees and the Department against civil litigation and ensures that employees will be protected when their individual actions are scrutinized, especially after a critical incident.

All employees will abide by these policies and are responsible for keeping themselves current on the content of this manual.

Stay safe,

Brian

*Brian Manley*

Chief of Police

EXHIBIT

A

| Policy **200** | **Austin Police Department**<br>Policy Manual |
|---|---|

# Response to Resistance

## 200.1  PURPOSE AND SCOPE
This policy recognizes that the use of force in response to resistance by law enforcement requires constant evaluation and that response to resistance is a serious responsibility. The purpose of this policy is to provide officers with guidelines on objectively reasonable response to resistance. While there is no way to specify the exact amount or type of objectively reasonable force to be applied in any situation, each officer is expected to use these guidelines to make such decisions in a professional, impartial, and objectively reasonable manner.

This policy is written in terms to apply to sworn officers. In incidents where civilian employees are authorized to use force, they are subject to the same policies and procedures as officers but the test of objective reasonableness is judged from the perspective of an objectively reasonable civilian employee.

### 200.1.1  PHILOSOPHY
The use of force by law enforcement personnel is a matter of critical concern both to the public and to the law enforcement community. Officers are involved on a daily basis in numerous and varied human encounters and when warranted, may exercise control over another in carrying out their duties.

The Department recognizes and respects the value of all human life and dignity without prejudice to anyone. It is also understood that vesting officers with the authority to use lawful and objectively reasonable force and to protect the public welfare requires a careful balancing of all human interests.

### 200.1.2  DEFINITIONS
**Bodily Injury** - Physical pain, illness or any impairment of physical condition (Tex. Penal Code § 1.07(8)).

**Deadly Force** - Force that is intended or known by the officer to cause, or in the manner of its use or intended use is known to be capable of causing death or serious bodily injury (Tex. Penal Code § 9.01(3)).

**Force** - Any physical contact with a subject by an officer using the body or any object, device, or weapon, not including unresisted escorting or handcuffing a subject.

**Non-Deadly Force** - Any application of force other than deadly force.

**Objectively Reasonable** - An objective standard viewed from the perspective of a reasonable officer on the scene, without the benefit of 20/20 hindsight, and within the limitations of the totality of the circumstances presented at the time of the incident.

**Serious Bodily Injury** - Bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ (Tex. Penal Code § 1.07(46)).

Copyright Lexipol, LLC 2017/07/21, All Rights Reserved.<br>Published with permission by Austin Police Department

# Austin Police Department
### Policy Manual

*Response to Resistance*

**De-escalation** - Using techniques to stabilize the situation and reduce the immediacy or the threat, so that more options and resources are available to bring about a successful resolution to an encounter with a non-compliant subject.  The goal of de-escalation is to gain the voluntary compliance of subjects, when feasible, thereby eliminating the need to use force in response to resistance.

**De-escalation Techniques** - Communicative or other actions used by officers, when safe, and without compromising law-enforcement priorities, that are designed to increase the likelihood of gaining voluntary compliance from a non-compliant subject, and reduce the likelihood of using force in response to resistance.

### 200.1.3  DUTY TO INTERCEDE
Any officer present and observing another officer using force that is clearly beyond that which is objectively reasonable under the circumstances shall, when in a position to do so, intercede to prevent the use of such excessive force. Such officers should also promptly report these observations to a supervisor.

### 200.1.4  RESPONSE TO RESISTANCE RELATED POLICIES

(a)     Policy 200 (Response to Resistance).

(b)     Policy 202 (Firearm Discharge Situations).

(c)     Policy 204 (Leg Restraint Guidelines)

(d)     Policy 206 (Control Devices and Techniques).

(e)     Policy 208 (TASER® Guidelines).

(f)     Policy 211 (Response to Resistance Inquiry, Reporting and Review).

(g)     Policy 212 (Force Review Board).

## 200.2  RESPONSE TO RESISTANCE POLICY
While the type and extent of force may vary, it is the policy of this department that officers use only that amount of objectively reasonable force which appears necessary under the circumstances to successfully accomplish the legitimate law enforcement purpose in accordance with this policy.

(a)     Given that no policy can realistically predict every situation an officer might encounter, it is recognized that each officer must be entrusted with well-reasoned discretion in determining the appropriate response to resistance in each incident.

(b)     Circumstances may arise in which officers reasonably believe that it would be impracticable or ineffective to use any of the standard tools, weapons, or methods provided by the Department. Officers may find it more effective or practicable to improvise their response to rapidly unfolding conditions they are confronting. In such circumstances, the use of any improvised device or method must still be objectively reasonable and used only to the extent which reasonably appears necessary to accomplish a legitimate law enforcement purpose.

Copyright Lexipol, LLC 2017/07/21, All Rights Reserved.
Published with permission by Austin Police Department

# Austin Police Department
## Policy Manual

*Response to Resistance*

(c)    While it is the ultimate objective of every law enforcement encounter to minimize injury to everyone involved, nothing in this policy requires an officer to actually sustain physical injury before applying objectively reasonable force.

(d)    Any complaint by a subject that an officer caused pain or injury shall be treated as a response to resistance force incident, except complaints of minor discomfort from unresisted handcuffing.

### 200.2.1   DETERMINING THE OBJECTIVE REASONABLENESS OF FORCE

Any interpretation of objective reasonableness about the amount of force that reasonably appears to be necessary in a particular situation must allow for the fact that police officers are often forced to make split-second decisions in circumstances that are tense, uncertain and rapidly evolving, and the amount of time available to evaluate and respond to changing circumstances may influence their decisions. The question is whether the officer's actions are "objectively reasonable" in light of the facts and circumstances confronting him.

(a)    When determining whether to apply any level of force and evaluating whether an officer has used objectively reasonable force, a number of factors should be taken into consideration. These factors include, but are not limited to:

    1.    The conduct of the individual being confronted as reasonably perceived by the officer at the time.

    2.    Officer/subject factors such as age, size, relative strength, skill level, injury/level of exhaustion and number of officers vs. subjects.

    3.    Influence of drugs/alcohol or mental capacity.

    4.    Proximity of weapons.

    5.    The degree to which the subject has been effectively restrained and his ability to resist despite being restrained.

    6.    Time and circumstances permitting, and the availability of other options (what resources are reasonably available to the officer under the circumstances).

    7.    Seriousness of the suspected offense or reason for contact with the individual.

    8.    Training and experience of the officer.

    9.    Potential for injury to citizens, officers and subjects.

    10.    Risk of escape.

    11.    Whether the conduct of the individual being confronted no longer reasonably appears to pose an imminent threat to the officer or others.

    12.    Other exigent circumstances.

Copyright Lexipol, LLC 2017/07/21, All Rights Reserved.
Published with permission by Austin Police Department

# Austin Police Department
### Policy Manual

*Response to Resistance*

---

**200.2.2   USE OF FORCE TO AFFECT A DETENTION, AN ARREST OR TO CONDUCT A SEARCH**

An officer is justified in using reasonable force when the officer reasonably believes the use of such force is immediately necessary (Tex. Penal Code § 9.51(a)):

(a)   To make or assist in a detention or an arrest, or to conduct a search that the officer reasonably believes is lawful.

(b)   To prevent or assist in preventing escape after an arrest, provided the officer reasonably believes the arrest or search is lawful.

(c)   To make an arrest or conduct a search under a warrant that the officer reasonably believes is valid.

**200.2.3   NOTICE OF AUTHORITY AND IDENTITY**

If it is not already reasonably known by the subject to be searched or arrested, or it is not reasonably impracticable to do so, officers should make clear their intent to arrest or search and identify themselves as a peace officer before using force (Tex. Penal Code § 9.51(a)(2)).

**200.3   DEADLY FORCE APPLICATIONS**

An officer has no duty to retreat and is only justified in using deadly force against another when and to the extent the officer reasonably believes the deadly force is immediately necessary to (Tex. Penal Code § 9.51(c) and (e)):

(a)   Protect himself or others from what he reasonably believes would be an imminent threat of death or serious bodily injury.

(b)   Make an arrest or to prevent escape after arrest when the officer has probable cause to believe that:

1.   The subject has committed or intends to commit an offense involving the infliction or threatened infliction of serious bodily injury or death; or

2.   The officer reasonably believes that there is an imminent or potential risk of serious bodily injury or death to any other person if the subject is not immediately apprehended.

**200.4   REPORTING THE RESPONSE TO RESISTANCE**

Any response to resistance by a member of this department shall be documented promptly, completely and accurately in an appropriate report as prescribed by Policy 211 (Response to Resistance Inquiry, Reporting, and Review).

**200.4.1   NOTIFICATION TO SUPERVISORS**

Supervisor notification shall be made as soon as practicable following any force incident or allegation of use of force.

---

Copyright Lexipol, LLC 2017/07/21, All Rights Reserved.
Published with permission by Austin Police Department

# Austin Police Department
## Policy Manual

*Response to Resistance*

## 200.4.2 MEDICAL ATTENTION

Prior to booking or release, medical assistance shall be obtained for any subject who has sustained visible injury, expressed a complaint of injury or continuing pain or who has been rendered unconscious. Based upon the officer's initial assessment of the nature and extent of the subject's injuries, medical assistance may consist of examination by fire personnel, paramedics, hospital staff or medical staff at the jail.

A subject who exhibits extreme agitation, violent irrational behavior accompanied by profuse sweating, public disrobing, extraordinary strength beyond their physical characteristics and a high resistance to pain (sometimes called "Excited Delirium Syndrome (ExDS)"), or who requires a protracted physical encounter with multiple officers to be brought under control, may be at an increased risk of sudden death and shall be examined by qualified medical personnel as soon as the symptoms are recognized. Any individual exhibiting signs of distress after such an encounter shall be medically cleared prior to booking.

If any individual refuses medical attention, such a refusal shall be fully documented in related reports and, whenever practicable, should be witnessed by another officer and/or medical personnel. If an audio recording is made of the contact or an interview with the individual, any refusal should be included, if possible.

## 200.4.3 ASSISTING MEDICAL PROFESSIONALS

(a)   An officer who restrains a patient to assist medical personnel, with an amount of force which does not rise above the level of holding the patient down (e.g. arms, legs, foot, torso) is not required to report a Response to Resistance or notify their supervisor as outlined in APD Policies 211 and 200.4.1.

  1.   Medical personnel are:

    (a)   Medical staff at a medical facility (e.g. Brackenridge, Austin State Hospital, Seton)

    (b)   Licensed emergency medical technicians (EMT), phlebotomist, or other medical professional in performance of their official medical duties

(b)   If an officer uses a level of force greater than merely holding a limb or applying bodily weight on the patient, the officer will adhere to APD Policies 211 and 200.4.1 Response to Resistance by:

  1.   Notifying their supervisor, and

  2.   Completing an incident report including the title code 8400

---

Copyright Lexipol, LLC 2017/07/21, All Rights Reserved.
Published with permission by Austin Police Department

C I T A T I O N

T H E   S T A T E   O F   T E X A S

**CAUSE NO. D-1-GN-20-003037**

IRIS E. SALAZAR, INDIVIDUALLY, AND AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF LESLIE
YOLANDA SALAZAR                                                                         , Plaintiff

    vs.
THE CITY OF AUSTIN, TEXAS; THOMAS BROWN; ELIAS ROBLES
                                                                                       , Defendant

TO:   CITY OF AUSTIN TEXAS
      BY SERVING THROUGH ITS MAYOR, CLERK, SECRETARY OF TREASURER
      301 WEST 2ND STREET
      AUSTIN, TEXAS 78701

Defendant, in the above styled and numbered cause:

**YOU HAVE BEEN SUED.  You may employ an attorney.  If you or your attorney do not file a written answer with the
clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after
you were served this citation and petition, a default judgment may be taken against you.**

Attached is a copy of the PLAINTIFF'S ORIGINAL PETITION  of the PLAINTIFF in the above styled and numbered
cause, which was filed on JUNE 8,2020 in the 98TH JUDICIAL DISTRICT COURT of Travis County, Austin, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office, June 16, 2020.

REQUESTED BY:
SCOTT S. COOLEY
512 E. 4TH ST.
LAMPASAS, TX 76550
BUSINESS PHONE:(512)556-6228   FAX:(844)318-6073



Velva L. Price
Travis County District Clerk
Travis County Courthouse
1000 Guadalupe, P.O. Box 679003 (78767)
Austin, TX 78701

PREPARED BY: MELISSA ROMERO

-- - -- - -- - -- - -- - -- **R E T U R N** -- - -- - -- - -- - -- - --

Came to hand on the _____ day of _____, _____ at _____ o'clock ____M., and executed at
_____ within the County of _____ on the _____ day
of _____, _____, at _____ o'clock ____M.,

by delivering to the within named _____, each in person, a
true copy of this citation together with the PLAINTIFF'S ORIGINAL PETITION  accompanying pleading, having first
attached such copy of such citation to such copy of pleading and endorsed on such copy of citation the date of
delivery.

Service Fee: $ _____

Sworn to and subscribed before me this the

_____ day of _____, _____.

_____
Sheriff / Constable / Authorized Person

By:_____

_____
Printed Name of Server

_____
Notary Public, THE STATE OF TEXAS

_____ County, Texas

D-1-GN-20-003037                    SERVICE FEE NOT PAID                    P01 - 000093526

☐Original          ☐Service Copy

C I T A T I O N

T H E   S T A T E   O F   T E X A S

**CAUSE NO. D-1-GN-20-003037**

IRIS E. SALAZAR, INDIVIDUALLY, AND AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF LESLIE
YOLANDA SALZAR
, Plaintiff

    vs.

THE CITY OF AUSTIN, TEXAS; THOMAS BROWN; ELIAS ROBLES
, Defendant

TO:   THOMAS BROWN
      AUSTIN POLICE DEPARTMENT
      715 E 8TH ST
      AUSTIN, TEXAS 78701-3300

Defendant, in the above styled and numbered cause:

**YOU HAVE BEEN SUED.  You may employ an attorney.  If you or your attorney do not file a written answer with the
clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after
you were served this citation and petition, a default judgment may be taken against you.**

Attached is a copy of the PLAINTIFF'S ORIGINAL PETITION  of the PLAINTIFF in the above styled and numbered
cause, which was filed on JUNE 8,2020 in the 98TH JUDICIAL DISTRICT COURT of Travis County, Austin, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office, June 16, 2020.

REQUESTED BY:
SCOTT S. COOLEY
512 E. 4TH ST.
LAMPASAS, TX 76550
BUSINESS PHONE:(512)556-6228  FAX:(844)318-6073



Velva L. Price
Travis County District Clerk
Travis County Courthouse
1000 Guadalupe, P.O. Box 679003 (78767)
Austin, TX 78701

PREPARED BY: MELISSA ROMERO

  -- - -- - -- - -- - -- - -- **R E T U R N** -- - -- - -- - -- - -- - --

Came to hand on the _____ day of _____, _____ at _____ o'clock _____M., and executed at
_____ within the County of _____ on the _____ day
of _____, _____, at _____ o'clock _____M.,
by delivering to the within named _____, each in person, a
true copy of this citation together with the PLAINTIFF'S ORIGINAL PETITION  accompanying pleading, having first
attached such copy of such citation to such copy of pleading and endorsed on such copy of citation the date of
delivery.

Service Fee: $ _____

                                         _____
                                         Sheriff / Constable / Authorized Person

Sworn to and subscribed before me this the

_____ day of _____, _____.       By:_____

                                         _____
                                         Printed Name of Server

_____  _____ County, Texas
Notary Public, THE STATE OF TEXAS

D-1-GN-20-003037                   SERVICE FEE NOT PAID           P01 - 000093528
☐Original     ☐Service Copy

C I T A T I O N

T H E   S T A T E   O F   T E X A S

**CAUSE NO. D-1-GN-20-003037**

IRIS E. SALAZAR, INDIVIDUALLY, AND AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF LESLIE
YOLANDA SALAZAR
, Plaintiff

    vs.
THE CITY OF AUSTIN, TEXAS; THOMAS BROWN; ELIAS ROBLES
, Defendant

TO:   ELIAS ROBLES
      AUSTIN POLICE DEPARTMENT
      715 E 8TH ST
      AUSTIN, TEXAS 78701-3300

Defendant, in the above styled and numbered cause:

**YOU HAVE BEEN SUED.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.**

Attached is a copy of the PLAINTIFF'S ORIGINAL PETITION  of the PLAINTIFF in the above styled and numbered cause, which was filed on JUNE 8, 2020 in the 98TH JUDICIAL DISTRICT COURT of Travis County, Austin, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office, June 16, 2020.

REQUESTED BY:
SCOTT S. COOLEY
512 E. 4TH ST.
LAMPASAS, TX 76550
BUSINESS PHONE:(512)556-6228  FAX:(844)318-6073



Velva L. Price
Travis County District Clerk
Travis County Courthouse
1000 Guadalupe, P.O. Box 679003 (78767)
Austin, TX 78701

PREPARED BY: MELISSA ROMERO

-- - -- - -- - -- - -- - -- **R E T U R N** -- - -- - -- - -- - -- - --

Came to hand on the _____ day of _____, _____ at _____ o'clock ____M., and executed at
_____ within the County of _____ on the _____ day
of _____, _____, at _____ o'clock ____M.,

by delivering to the within named _____, each in person, a
true copy of this citation together with the PLAINTIFF'S ORIGINAL PETITION  accompanying pleading, having first
attached such copy of such citation to such copy of pleading and endorsed on such copy of citation the date of
delivery.

Service Fee: $ _____

Sworn to and subscribed before me this the

_____ day of _____, _____.

                        _____
                        Sheriff / Constable / Authorized Person

                        By:_____

                        _____
                        Printed Name of Server

_____
Notary Public, THE STATE OF TEXAS
                        _____ County, Texas

D-1-GN-20-003037                   SERVICE FEE NOT PAID            P01 - 000093529

☐ Original        ☐ Service Copy